## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK) and BNSF RAILWAY COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| MS CONTRACTING, LLC, | CASE NO. |
| Defendant. | |

## COMPLAINT

COMES NOW Plaintiffs, National Railroad Passenger Corporation ("Amtrak") and BNSF Railway Company and for their Complaint against MS Contracting, LLC ("MS Contracting") state as follows:

### THE PARTIES

1. Plaintiff National Railroad Passenger Corporation ("Amtrak") is a corporation created by an Act of Congress, 45 U.S.C. § 501 *et seq.*, now codified at 49 U.S.C. § 24101 *et seq.*, and the United States government owns more than half of Amtrak's capital stock. Amtrak has its principal place of business located in the District of Columbia and possesses legal capacity to sue.

2. Plaintiff BNSF Railway Company ("BNSF") is a corporation doing business in the State of Missouri, incorporated in the State of Delaware, and having its principal place of business in the State of Texas.

3. Defendant MS Contracting, LLC ("MS Contracting") is a Missouri Limited Liability Company with its principal place of business in Brookfield, Linn County, Missouri. MS Contracting may be served with process through its registered agent, Michael E. Sattman, 25851

Highway M, Brookfield, Missouri 64628.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over the claims of plaintiff Amtrak in this matter pursuant to 28 U.S.C. §§ 1331 and 1349. The Court also has diversity subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court's exercise of jurisdiction over the claims of plaintiff Amtrak is also proper pursuant to 28 U.S.C. § 1367.

6. Venue is properly laid in the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b)(2) because it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, and because MS Contracting resides within the Eastern District of Missouri.

## FACTUAL ALLEGATIONS

7. This case arises from the derailment of an Amtrak passenger train on June 27, 2022.

8. Amtrak provides passenger rail service by utilizing track owned by other railroads in the State of Missouri, including BNSF.

9. BNSF owns railroad tracks in the State of Missouri, including the track on which the incident and derailment described herein occurred.

10. MS Contracting owns and operates a contracting company which is located at 25851 County Road M in Brookfield, Missouri 64628.

11. On June 27, 2022, on behalf of and at the direction of MS Contracting, Billy Dean Barton II ("Barton"), an employee of MA Contracting, was operating a 2007 Kenworth dump truck

{00222379.DOCX}

owned by MS Contracting bearing VIN# 1NKWXBEX97J177480 (the "Dump Truck"),

12. While utilizing the Dump Truck loaded with rock to make a delivery for and on behalf of MS Contracting, Barton attempted to cross a BNSF railroad grade crossing identified as U.S. Department of Transportation Crossing No. 005284Y, (the "grade crossing") near Mendon, Missouri.

13. Despite the fact that it was unsafe, careless and reckless to do so because of the clearly visible approaching Amtrak Train 4, Barton failed to yield the right of way to the approaching Amtrak Southwest Chief Train 4 ("Train 4"), and instead attempted to cross the grade crossing which resulted in a collision between the Dump Truck and Train 4, causing Train 4 to derail.

14. Train 4 consisted of two locomotives and eight cars, and carried 289 occupants, including passengers and train crew members.

15. The collision between the Dump Truck and Train 4 – and the train's subsequent derailment – caused fatalities and personal injuries to Amtrak passengers and employees as well as significant property damage, both real and personal, including significant damages to the BNSF track structure and the passenger cars and locomotives of the Amtrak Train 4.

16. At all relevant times to this Complaint, the actions of Barton were: (1) within the course and scope of his employment with MS Contracting; (2) with MS Contracting's authority, consent, and knowledge; and (3) for MS Contracting's benefit and under its direction and control.

17. At all times relevant to this complaint, the Dump Truck was owned and operated by, on behalf of MS Contracting, for the benefit of and/or at the direction of MS Contracting.

18. As a result of the tortious conduct of the defendant as alleged herein, Amtrak has incurred damages well in excess of $75,000.

19.     As a result of the tortious conduct of the defendant as alleged herein, BNSF has incurred damages well in excess of $75,000.

## COUNT I: NEGLIGENCE

20.     The allegations of paragraphs 1 through 19 are re-alleged and incorporated herein by reference.

21.     MS Contracting owed a duty of reasonable care to BNSF, Amtrak and the passengers and crew aboard Amtrak Train 4.

22.     MS Contracting owed the highest degree of care to BNSF, Amtrak, and the passengers and crew aboard Amtrak Train 4.

23.     MS Contracting breached its duty of care to BNSF, Amtrak and the passengers and crew aboard Amtrak Train 4.

24.     At all times relevant, MS Contracting negligently, carelessly, and recklessly operated the Dump Truck, causing the collision with and derailment of Amtrak Train 4.

25.     At all relevant times, MS Contracting, its agents, officers and/or employees negligently, carelessly and recklessly failed to properly maintain, inspect and/or repair the Dump Truck, causing the collision and derailment of Amtrak Train 4.

26.     At all relevant times, MS Contracting, its agents, officers and/or employees negligently, carelessly and recklessly failed to properly train and supervise its employees, including Bill Barton, causing the collision and derailment of Amtrak Train 4.

27.      At all relevant times, MS Contracting, its agents, officers and/or employees negligently, carelessly and recklessly failed to adopt, promulgate and enforce policies and procedures regarding the proper operation of its vehicles and trucks, including the Dump Truck, at railroad crossings, causing the collision and derailment of Amtrak Train 4.

28. MS Contracting and its agents, officers, or employees were negligent, grossly negligent, and/or reckless in one or more of the following ways:

> a. failing to use the highest degree of care in the operation of the Dump Truck in violation of § 304.012 RSMo ;
>
> b. operating the Dump Truck in a careless and imprudent manner in violation of § 304.012 RSMo.;
>
> c. failing to stop at the railroad crossing in violation of a posted stop sign and § 304.351 RSMo.;
>
> d. failing to stop at the railroad crossing at a point between 15 and 50 feet of the nearest rail of the railroad track and not proceed until it was safe to do so in violation of § 304.035.1 RSMo;
>
> e. failing to stop at the railroad crossing at a point between 15 and 50 feet of the nearest rail of the railroad track despite the fact that Amtrak Train 4 was clearly visible and in hazardous proximity to the crossing;
>
> f. failing to stop at the railroad crossing at a point between 15 and 50 feet of the nearest rail of the railroad track despite the presence of traffic signs and/or, devices at the railroad crossing;
>
> g. operating the Dump truck through the railroad crossing without sufficient undercarriage clearance necessary to prevent the undercarriage of the vehicle from contacting the railroad crossing in violation of § 304.035.4 RSMo;
>
> h. operating the Dump Truck, a commercial motor vehicle, at a rate of speed which did not permit the Dump Truck to stop before reaching the nearest rail of the railroad crossing in violation of § 304.035.5 RSMo;

i. driving the Dump truck upon or over the railroad crossing without taking due caution to ascertain that the course was clear in violation of § 304.035.5 RSMo;

j. failing to observe, heed and comply with the clearly visible and lawfully placed railroad crossing warning signs;

k. failing to observe and hear the approaching Amtrak Train 4;

l. failing to yield the right-of-way to the approaching Amtrak Train 4;

m. failing to maintain control of the Dump Truck;

n. failing to keep a proper lookout;

o. negligently operating the vehicle while utilizing or otherwise being distracted by an electronic wireless communications device;

p. failing to observe, hear and heed Amtrak Train 4 warning signals, including the train's horn, bells and lights;

q. failing to train and supervise its employees, including Barton, in the proper procedures for operating the Dump Truck in a safe and prudent manner, and in particular, in the operation of the Dump Truck at railroad crossings;

r. failing to supervise, test, observe and otherwise ensure that its employees, including Barton, were sufficiently qualified, knowledgeable and understood and followed the proper procedures for operating the Dump Truck in a safe and prudent manner, and in particular at railroad crossings;

s. failing to properly inspect, maintain, and/or repair the Dump Truck to ensure it operated in a safe manner; and

t. failing to follow proper loading procedures for the Dump Truck;

29. As a direct and proximate result of the acts and omissions of MS Contracting, its employees and agents, Amtrak's rolling stock and locomotives sustained significant damage, Amtrak incurred labor costs, suffered delays and disruption to its service, and has been or will be subjected to other economic and financial losses due to the collision, including but not limited to the costs of making alternative travel arrangements for its passengers and crew, medical and related expenses for its passengers and crew, the costs of responding to the collision, and damages resulting from the loss of use of its equipment.

30. As a direct and proximate result of the acts and omissions of MS Contracting, its employees and agents, BNSF's railroad track sustained significant damage, BNSF incurred labor costs, suffered delays and disruptions to its service, and has been or will be subjected to other economic and financial losses due to the collision, including but not limited to the costs of responding to the collision and damages resulting from the loss of use of its equipment.

31. The aforementioned damages to Amtrak exceed $75,000.

32. The aforementioned damages to BNSF exceed $75,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs National Railroad Passenger Corporation ("Amtrak") and BNSF Railway Company respectfully pray for judgment in their favor and against defendant MS Contracting, LLC in an amount exceeding $75,000; for their costs of this action; and for such further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs request a jury trial on all issues so triable.

                                                                     Respectfully submitted,

                                                         */s/ Sean P. Hamer*

| | |
|---|---|
| Sean P. Hamer | MO # 48153 |
| Kelly L. Murphy | MO # 75573 |
| Scott R. Ast | MO # 51699 |
| Paula Brown | MO # 45870 |
| Alex McKenna | MO # 72024 |

SCHARNHORST AST KENNARD GRIFFIN, P.C.
1100 Walnut, Suite 1950
Kansas City, Missouri 64106
Telephone: (816) 268-9400
Facsimile: (816) 268-9409
Email: shamer@sakg.com
       kmurphy@sakg.com
       pbrown@sakg.com
       sast@sakg.com
       amckenna@sakg.com
*Attorneys for Plaintiffs*